# IN THE UNITED STATES COURT OF APPEALS
## FOR THE SIXTH CIRCUIT

SUSAN FOX,

               Plaintiff,

    and

ROSE COULTER-OWENS, individually
and on behalf of all others similarly
situated,

               Plaintiff-Appellant,

    v.

TIME INC., a Delaware Corporation,

               Defendant-Appellee.

Case Nos. 16-1321 and 16-1380

Appeal from U.S. Dist. Court
for the Eastern Dist. of Michigan

No. 2:12-cv-14390-GCS-MKM

Hon. George Caram Steeh

## PLAINTIFF-APPELLANT'S RESPONSE
## TO DEFENDANT-APPELLEE'S MOTION TO DISMISS

William S. Consovoy
will@consovoymccarthy.com
CONSOVOY MCCARTHY PARK PLLC
3033 Wilson Blvd, Suite 700
Arlington, Virginia 22201
Tel: 703.243.9423

Patrick Strawbridge
patrick@consovoymccarthy.com
CONSOVOY MCCARTHY PARK PLLC
Ten Post Office Square,
8th Floor South PMB #706
Boston, Massachusetts 02109
Tel: 617.227.0548

Ryan D. Andrews
randrews@edelson.com
Roger Perlstadt
rperlstadt@edelson.com
EDELSON PC
350 North LaSalle Street, 13th Floor
Chicago, Illinois 60654
Tel: 312.589.6370
Fax: 312.589.6378

*Counsel for Plaintiff-Appellant*

# TABLE OF CONTENTS

INTRODUCTION ................................................................................. 1

BACKGROUND ................................................................................. 1

ARGUMENT ..................................................................................... 2

I.    Time's Invasion of Ms. Coulter-Owens's Privacy
      Was a Concrete Injury Sufficient to Support Article III
      Standing............................................................................... 4

      A.    *Spokeo* Confirms that Intangible Invasions of Legally
            Protected Interests Can Be Concrete Injuries. ........................... 4

      B.    Time's Disclosure of Its Subscribers' Choices in Reading
            Materials was a Concrete Injury. ............................................ 7

            1.    The VRPA bears a close relationship to traditional
                  common law actions for breach of confidentiality. ......... 7

            2.    The Michigan Legislature exercised its judgment to
                  protect an individual's interest in the privacy of
                  their reading choices. .................................................... 10

            3.    Time's disclosure was not "a bare procedural
                  violation." ..................................................................... 12

II.   Dismissing the Appeal on the Basis of Recent Amendments to the
      VRPA Is Not Warranted.................................................................... 14

CONCLUSION ...................................................................................... 20

# TABLE OF AUTHORITIES

## Cases:

*Allstate Insurance Co. v. Faulhaber*, 403 N.W.2d 527
(Mich. Ct. App. 1987) ..........................................................................18-19

*Beaudry v. TeleCheck Servs., Inc.*, 579 F.3d 702 (6th Cir. 2009) ........................... 3

*Boelter v. Hearst Comm. Inc.*, No. 15-cv-3934, 2016 WL 3369541
(S.D.N.Y June 17, 2016) ................................................................ 16

*Brewer v. A.D. Transp. Express, Inc.*, 782 N.W.2d 475 (Mich. 2010)............. 16, 17

*Diamond v. Charles*, 476 U.S. 54 (1986) ................................................................. 6

*Doe v. Chao*, 540 U.S. 614 (2004)........................................................................ 14

*Douglas v. Stokes*, 149 S.W. 849 (Ky. Ct. App. 1912)............................................ 9

*FAA v. Cooper*, 132 S. Ct. 1441 (2012)................................................................ 14

*Frank W. Lynch & Co. v. Flex Techs., Inc.*, 624 N.W.2d 180
(Mich. 2001) ........................................................................... 15, 18, 19, 20

*Gen. Motors Corp. v. Dep't of Treasury*, 803 N.W.2d 698
(Mich. Ct. App. 2010) ................................................................ 18

*Imhoff Investment, L.L.C. v. Alfoccino, Inc.*, 792 F.3d 627 (6th Cir. 2015) ............. 5

*In re Carter*, 553 F.3d 979 (6th Cir. 2009) .................................................5-6, 11-12

*In re Oswalt*, 444 F.3d 524 (6th Cir. 2006) ......................................................... 18

*In re Oswalt*, 318 B.R. 817 (W.D. Mich. 2004) .................................................... 20

*Jackson v. Sedgwick Claims Mgmt. Servs., Inc.*, 731 F.3d 556 (6th Cir. 2013) ..... 15

*Johnson v. Pastoriza*, 818 N.W.2d 279 (Mich. 2012) .......................................... 17

*Kia Motors Am., Inc. v. Glassman Oldsmobile Saab Hyundai, Inc.*,
706 F.3d 733 (6th Cir. 2013) ................................................................. 15, 16

*Kinder v. Meredith Corp.*, No. 14-cv-11284, 2014 WL 4209575
(E.D. Mich. Aug. 26, 2014) ....................................................................... 20

*LaFontaine Saline, Inc. v. Chrysler Group, LLC*, 852 N.W.2d 78 (Mich. 2014)... 17

*Landgraf v. USI Film Prods.*, 511 U.S. 244 (1994) ................................... 15

*Linda R.S. v. Richard D.*, 410 U.S. 614 (1973) ......................................... 10

*Lujan v. Defenders of Wildlife*, 504 U.S. 555 (1992) ...................... *passim*

*Nashville, C. & St. L. Ry. Co. v. Wallace*, 288 U.S. 249 (1933)............................ 10

*O'Shea v. Littleton*, 414 U.S. 488 (1974) ................................................. 10

*Olmstead v. United States*, 277 U.S. 438 (1928) ..................................... 14

*Parsons v. U.S. Dep't of Justice*, 801 F.3d 701 (6th Cir. 2015) ....................4-5, 6

*People v. Sheeks*, 625 N.W.2d 798 (Mich. Ct. App. 2001) ....................... 18, 19, 20

*Pollard v. Photographic Co.*, (1880) 40 Ch. D. 345................................... 9

*Prince Albert v. Strange*, (1848) 41 Eng. Rep. 1171 (Ch.)....................................8-9

*Roberts v. Hamer*, 655 F.3d 578 (6th Cir. 2011) ..................................... 15

*Romein v. Gen. Motors Corp.*, 425 N.W.2d 174 (Mich. Ct. App. 1988)............... 18

*Shalala v. Ill. Council on Long Term Care, Inc.*, 529 U.S. 1 (2000)...................... 10

*Spokeo v. Robins*, 136 S. Ct. 1540 (2016) ....................................... *passim*

*Stanley v. Georgia*, 394 U.S. 557 (1969)................................................. 14

*Steel Co. v. Citizens for a Better Env't*, 523 U.S. 83 (1998).................................... 8

*Sterk v. Redbox Automated Retail, LLC*, 770 F.3d 618 (7th Cir. 2014) ...........13-14

*Summers v. Earth Island Inst.*, 555 U.S. 488 (2009) ............................................... 13

*U.S. v. Mooradian*, No. 85-3553, 1985 WL 14134 (6th Cir. Dec. 10, 1985) ....14-15

*Valley Forge Christian Coll. v. Americans United for Separation of Church & State, Inc.*, 454 U.S. 464 (1982) ..................................................... 10

*Wilson v. Straub*, 27 F. App'x 454 (6th Cir. 2001).................................................. 14

*Wysocki v. IBM Corp.*, 607 F.3d 1102 (6th Cir. 2010) ........................................... 13

## Constitutional Provisions:

U.S. Const. art. III, § 2 ................................................................................................ 4

## Statutes and Rules:

6th Cir. R. 27(d) ........................................................................................................ 14

18 U.S.C. § 2710 ....................................................................................................... 11

2007 Mich. Pub. Acts. 103 ...................................................................................17-18

2014 Mich. Pub. Acts 352 ......................................................................................... 17

2016 Mich. Pub. Acts 92 ...................................................................................... 16, 17

M.C.L. § 141.1157 ...............................................................................................15-16

M.C.L. § 324.21301 .................................................................................................. 16

M.C.L. § 445.1712 ................................................................................................ 1, 11

**<u>Other Authorities</u>:**

22 Am. Jur. 2d Damages § 2 ................................................................. 2

Ari Ezra Waldman, *Privacy as Trust: Sharing Personal Information in a
Networked World*, 69 U. Miami L. Rev. 559 (2015) ...................................... 8

Michigan Supreme Court, *151104 Deacon v. Pandora Media, Inc.*
 (Apr. 28, 2016), https://youtu.be/Q-WJQF5sSj4?t=41m  .......................... 16

Neil M. Richards, *The Perils of Social Reading*, 101 Geo. L.J. 689 (2013)........... 11

Neil M. Richards & Daniel J. Solove, *Privacy's Other Path: Recovering the Law
of Confidentiality*, 96 Geo. L. J. 123 (2007)............................................. 8, 9

*Privacy: Sales, Rentals of Videos, etc.*, House Legislative Analysis Section,
H.B. 5331 (Jan. 20, 1989)....................................................................10-11

S. Rep. No. 100–599 (1988) ................................................................. 11

## INTRODUCTION

Defendant-Appellee Time, Inc. ("Time") has moved to dismiss Plaintiff-Appellant Rose Coulter-Owens's appeal for lack of Article III standing based on the Supreme Court's recent decision in *Spokeo v. Robins*, 136 S. Ct. 1540 (2016), and for lack of statutory standing based on a recent amendment to the Michigan privacy statute at issue here. Time's motion should be denied. First, *Spokeo* confirms—rather than undermines—that Ms. Coulter-Owens has suffered an Article III injury. Second, what Time frames as a statutory standing issue is in reality a dispute over whether a recent Michigan statutory amendment deprives Ms. Coulter-Owens of a cause of action. The argument accordingly is not a proper ground to dismiss this appeal, but fails on the merits in any event because the amendment is not retroactive.

## BACKGROUND

Time publishes magazines, to which Ms. Coulter-Owens and other Michigan consumers subscribed. Michigan's Preservation of Personal Privacy Act (known as the Video Rental Privacy Act or VRPA) prohibits a seller of written materials, such as Time, from disclosing information about its customers' purchases without the customers' consent. *See* M.C.L. § 445.1712. It is undisputed, however, that Time regularly discloses its subscriber lists—which include individuals' names and magazine choices—to at least two third-party data miners: Acxiom Corporation

and Wiland Direct.[1] To remedy this invasion of her statutorily-protected right to privacy in her choice of reading materials, Ms. Coulter-Owens sued Time under the VRPA seeking, among other things, injunctive relief and statutory damages. *See* First Amended Complaint, R. 53, Page ID # 1016-1062.

The district court denied Time's motion to dismiss and certified a narrow class of subscribers to Time publications. The district court entered summary judgment in Time's favor, finding that Time did not sell the magazines to Ms. Coulter-Owens and other class members "at retail," as required by the VRPA. Summary Judgment Order, R. 166, Page ID # 5897-5903. That determination— which Ms. Coulter-Owens asserts was error—is the subject of this appeal. Hours before Ms. Coulter-Owens was scheduled to file her opening brief on the merits, however, Time moved to dismiss the appeal based on lack of standing.

## ARGUMENT

In its motion to dismiss, Time uses the terms "injury" and "damages" interchangeably. But "injury" and "damages" have different meanings, and the distinction is critical. "Injury is the illegal invasion of a legal right; damage is the loss, hurt, or harm that results from the injury." 22 Am. Jur. 2d Damages § 2. Here, by enacting the VRPA, the Michigan Legislature defined a legal right to privacy—

---

[1] Although not pertinent to the present motion, Time asserts that "Plaintiff proffered no evidence … that her name was provided to Wiland." Mot. at 5. That assertion is false. *See* Class Certification Order, R. 117, Page ID # 3789.

the right not to have one's choice in reading materials disclosed to others without one's consent—the invasion of which is an injury. To bring suit under the VRPA a plaintiff must have had that right invaded; but damage is irrelevant to whether a plaintiff has suffered a cognizable injury. Damages—which may take the form of statutory damages, *see Beaudry v. TeleCheck Servs., Inc.*, 579 F.3d 702, 706 (6th Cir. 2009)—are a remedies issue. Ms. Coulter-Owens meets both requirements.

First, Ms. Coulter-Owens suffered a concrete injury. Time's undisputed disclosure of her personal reading choices was an invasion of her legally protected privacy interest. Similar invasions have long been actionable at common law through suits for breach of confidence, and the Michigan Legislature expressly identified and elevated this particular kind of invasion to judicially cognizable status through the VRPA. Though intangible, the invasion of Ms. Coulter-Owens's and the other class members' privacy rights was a concrete and particularized injury. *Spokeo* firmly rejected Time's argument that something more is required.

Second, Ms. Coulter-Owens also has a remedy in the form of statutory damages. Although recent amendments to the VRPA purport to impose an actual damages requirement in order to have a cause of action under the statute, those amendments do not apply to Ms. Coulter-Owens's action because they are not retroactive. There is a strong presumption against retroactive application. The Michigan Legislature's failure to use express retroactivity language and its

3

inclusion of a future effective date indicate the amendment is not retroactive.

Regardless, because this issue does not bear on Article III standing, it is

inappropriately raised in a motion to dismiss.

**I.     Time's Invasion of Ms. Coulter-Owens's Privacy Was a Concrete Injury Sufficient to Support Article III Standing.**

Twice below, Time challenged Ms. Coulter-Owens's Article III standing,

which the district court rejected both times. Order on Motions to Dismiss, R. 47,

Page ID # 792-797; Summary Judgment Order, R. 166, Page ID # 5904. Relying

on the Supreme Court's recent decision in *Spokeo*, Time renews its challenge to

Ms. Coulter-Owens's Article III standing. Selectively quoting the decision, Time

asserts that "[Ms. Coulter-Owens's] allegation of a bare procedural violation of the

VRPA with no allegation or evidence of concrete harm does not satisfy the injury-

in-fact requirement of Article III." Mot. at 10. But Time's argument

misunderstands the *Spokeo* decision, this Court's broader Article III jurisprudence,

and the statutory privacy claims at issue in this case.

**A.     *Spokeo* Confirms that Intangible Invasions of Legally Protected Interests Can Be Concrete Injuries.**

Article III of the Constitution extends the judicial power of federal courts to

"Cases" and "Controversies," U.S. Const. art. III, § 2, and requires the litigant

invoking the federal courts' jurisdiction to have "standing," the first element of

which being that the litigant has suffered "an injury in fact." *Parsons v. U.S. Dep't*

4

*of Justice*, 801 F.3d 701, 709-10 (6th Cir. 2015). *Spokeo* reiterated the long-standing rule that "[t]o establish injury in fact, a plaintiff must show that he or she suffered 'an invasion of a legally protected interest' that is 'concrete and particularized' and 'actual or imminent, not conjectural or hypothetical.'" 136 S. Ct. at 1548 (quoting *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560 (1992)). Importantly, and contrary to Time's suggestion, the Supreme Court expressly held that the violation of a statutory right—in and of itself—may be a concrete injury so long as the right protects a congressionally identified interest. "Concrete' is not … necessarily synonymous with 'tangible.' Although tangible injuries are perhaps easier to recognize, we have confirmed in many of our previous cases that intangible injuries can nevertheless be concrete." *Spokeo*, 136 S. Ct. at 1549. Put simply, a plaintiff vindicating a concrete statutory interest "need not allege any *additional* harm beyond the one Congress has identified." *Id.* at 1549-50.

In so holding, the Court reaffirmed this Circuit's governing rule. *See Imhoff Investment, L.L.C. v. Alfoccino, Inc.*, 792 F.3d 627, 633 (6th Cir. 2015) ("Congress may … enact statutes creating legal rights, the invasion of which creates standing, even though no injury would exist without the statute.") (internal quotations omitted); *In re Carter*, 553 F.3d 979, 988 (6th Cir. 2009) ("Congress no doubt has the power to create new legal rights, and it generally has the authority to create a right of action whose only injury-in-fact involves the violation of that statutory

right."); *see also, e.g.*, *Parsons*, 801 F.3d at 711-12 ("reputational injury" and "stigmatization" can constitute injury in fact).

To be sure, a plaintiff does not "automatically satisf[y] the injury-in-fact requirement whenever a statute grants a person a statutory right and purports to authorize that person to sue to vindicate that right." *Spokeo*, 136 S. Ct. at 1549. But the relevant issue is *not* whether the statutory violation resulted in "actual harm." Mot. at 11. That is the precise argument the Supreme Court rejected. The issue is whether the *legislature* has created a concrete private interest. Endorsing Justice Kennedy's *Lujan* concurrence, the Court held that "'Congress,'" or, here, the Michigan Legislature, "'has the power to define injuries and articulate chains of causation that will give rise to a case or controversy where none existed before.'" *Spokeo*, 136 S. Ct. at 1549 (quoting *Lujan*, 504 U.S. at 580) (Kennedy, J., concurring in part and concurring in the judgment); *see id*. at 1553 (Thomas, J., concurring) ("Congress can create new private rights and authorize private plaintiffs to sue based simply on the violation of those private rights.").[2] The issue, then, is whether the legislature has created such a right—not, as Time would have

---

[2] There is no reason to believe that *Spokeo*'s references in the Article III equation to the central role of Congress (the relevant legislative body in that case) was meant to deny state legislatures equal solicitude. *See, e.g.*, *Diamond v. Charles*, 476 U.S. 54, 65 n.17 (1986) ("The [state] Legislature, of course, has the power to create new interests, the invasion of which may confer standing. In such a case, the requirements of Art. III may be met.").

6

it (and as Spokeo argued), whether Ms. Coulter-Owens suffered "concrete injury *resulting from* the alleged statutory violation." Mot. at 8 (emphasis added).

## B. Time's Disclosure of Its Subscribers' Choices in Reading Materials was a Concrete Injury.

By virtue of the VRPA, Ms. Coulter-Owens had a legally protected interest in Time maintaining the privacy of her reading choices, which Time invaded by its disclosure of that information to two data miners. "In determining whether an intangible harm constitutes injury in fact, both history and the judgment of [the legislature] play important roles." *Spokeo*, 136 S. Ct. at 1549. As explained below, both factors establish that the Michigan Legislature created a substantive, concrete interest in the privacy of Ms. Coulter-Owens's reading choices, which Time invaded. No more is required to establish Article III injury in fact.[3]

### 1. The VRPA bears a close relationship to traditional common law actions for breach of confidentiality.

Under *Spokeo*, "it is instructive to consider whether an alleged intangible harm has a close relationship to a harm that has traditionally been regarded as

---

[3] Time does not argue that the invasion causing this injury was conjectural or hypothetical, or not particularized to her. Nor could it. An injury is "particularized" so long as it "affect[s] the plaintiff in a personal and individual way." *Spokeo*, 136 S. Ct. at 1548 (quoting *Lujan*, 504 U.S. at 560 n.1). The violation of an individual's statutory rights (not the statutory rights of others) and the assertion of individual (rather than collective) rights makes an injury particularized. *See id*. Here, Ms. Coulter-Owens suffered a particularized injury because Time violated her statutory rights by disclosing her choice in reading material, which was an individual rather than a collective injury.

providing a basis for a lawsuit in English or American courts." *Id*. This is because federal judicial power under Article III applies to "cases and controversies of the sort traditionally amenable to, and resolved by, the judicial process." *Steel Co. v. Citizens for a Better Env't*, 523 U.S. 83, 102 (1998). If the interest follows from the common law, it is obviously concrete.

Here, while Time necessarily obtains information about its customers' reading choices as part of the subscriber relationship, the VRPA requires Time to keep that information confidential. Time's unauthorized disclosure of that information to third parties was a breach of this duty, and breach of confidentiality has a long history of providing a basis for suit in English and American courts. As scholars have noted, "[c]onfidentiality (or 'confidence' to use its earlier terminology) is a concept with ancient origins in the Anglo-American common law." Neil M. Richards & Daniel J. Solove, *Privacy's Other Path: Recovering the Law of Confidentiality*, 96 Geo. L. J. 123, 133 (2007); *see also* Ari Ezra Waldman, *Privacy as Trust: Sharing Personal Information in a Networked World*, 69 U. Miami L. Rev. 559, 617 (2015) (noting that the "tort of breach of confidentiality … has a long tradition in Anglo-American common law").

For example, in *Prince Albert v. Strange*, (1849) 41 Eng. Rep. 1171 (Ch.), Prince Albert sued to enjoin publication of private etchings made by members of the British royal family for their own amusement, which had been provided to a

printer solely to make copies to give to a few personal friends. Lord Chancellor Cottenham held that Prince Albert was entitled to an injunction on the basis of "breach of trust, confidence, or contract" because the printer created more copies than ordered, which made their way to the defendants. *Id.* at 1178-79 (quoting precedent that "[e]very clerk employed in a merchant's counting-house is under an implied contract that he will not make public that which he learns in the execution of his duty as clerk"); *see also Pollard v. Photographic Co.*, (1880) 40 Ch. D. 345, 349 ("Where a person obtains information in the course of a confidential employment, the law does not permit him to make any improper use of the information so obtained.").

An early Kentucky case noted that "[t]he ruling in [*Pollard*] has been followed in America, uniformly, so far as we have seen." *Douglas v. Stokes*, 149 S.W. 849, 850 (Ky. Ct. App. 1912). And indeed, by the end of the nineteenth century, "a robust body of confidentiality law protecting private information from disclosure existed throughout the Anglo-American common law," Richards & Solove, 96 Geo. L. J. at 125, and by the mid-twentieth century, American courts were hearing tort cases asserting breach of confidentiality, and contract cases asserting breach of an express or implied contract of nondisclosure, *id*. at 151-52. The VRPA is simply an extension of these well-established common law suits for breach of confidentiality.

9

2.    **The Michigan Legislature exercised its judgment to protect an individual's interest in the privacy of their reading choices.**

Even if the VPRA does not follow from the common law, which it does, the statute still creates a concrete interest. "The judiciary clause of the Constitution … did not crystallize into changeless form the procedure of 1789 as the only possible means for presenting a case or controversy otherwise cognizable by the federal courts." *Nashville, C. & St. L. Ry. Co. v. Wallace*, 288 U.S. 249, 264 (1933). Congress therefore can create "new rights of action that do not have clear analogs in our common law tradition." *Lujan*, 504 U.S. at 580 (Kennedy, J., concurring in part and concurring in the judgment).[4] To do so, Congress must "identify the injury it seeks to vindicate and relate the injury to the class of persons entitled to bring suit." *Id*. The Michigan Legislature did so here.

The Legislature recognized that a person's choice in reading materials "is nobody's business but one's own," and passed the statute "to explicitly protect a consumer's privacy in buying and borrowing" such materials. *Privacy: Sales,*

---

[4] Time's suggestion that Congress lacks this power would render numerous prior rulings void. *See, e.g., Linda R.S. v. Richard D.*, 410 U.S. 614, 617 n.3 (1973) ("Congress may enact statutes creating legal rights, the invasion of which creates standing, even though no injury would exist without the statute."); *O'Shea v. Littleton*, 414 U.S. 488, 493 n.2 (1974) (same); *Valley Forge Christian Coll. v. Americans United for Separation of Church & State, Inc.*, 454 U.S. 464, 487 n.24 (1982) (same). The Supreme Court "does not normally overturn, or so dramatically limit, earlier authority *sub silentio*." *Shalala v. Ill. Council on Long Term Care, Inc.*, 529 U.S. 1, 18 (2000).

*Rentals of Videos, etc.*, House Legislative Analysis Section, H.B. 5331 (Jan. 20, 1989); VRPA Legislative History, R. 53-1, Page ID # 1050. The VRPA was sparked by an incident involving President Reagan's nomination of Judge Robert Bork to the Supreme Court. *Id.* During the contentious battle over Judge Bork's nomination, a Washington, D.C. newspaper published a list of 146 videotapes rented from his local video store by his family. *See generally,* Neil M. Richards, *The Perils of Social Reading*, 101 Geo. L.J. 689, 694-95 (2013). This invasion of privacy also prompted Congress, one year before the Michigan Legislature acted, to pass a federal law prohibiting video providers from disclosing the rental and purchase records of their customers without consent. *See* Video Privacy Protection Act, 18 U.S.C. § 2710. In passing the VRPA's federal counterpart, Congress noted its concern with the creation of digital dossiers—or "information pools"—about ordinary citizens by companies collecting and gathering information about their behavior. *See* S. Rep. No. 100–599, 7 (1988) (Statement of Sen. Leahy). Ultimately, the Michigan Legislature chose to protect its citizens' privacy in their reading choices by, among other things, prohibiting exactly what Time did here: disclosing to third parties information identifying its customers as purchasers of particular reading materials. *See* M.C.L. § 445.1712.

That said, the principle that a legislative body can define new legal rights, the invasion of which is an injury sufficient to support Article III standing "is not

unlimited." *Carter*, 553 F.3d at 988. Congress or the Michigan Legislature could not, for example, pass a law requiring an "executive agency to 'follow the law'" and expect that obligation to be privately enforceable without some showing of harm beyond the violation of the statute itself. *Spokeo*, 136 S. Ct. at 1552 (Thomas, J., concurring). But that is not what the Michigan Legislature did here. It created a right that protects the informational privacy of individuals. "A plaintiff seeking to vindicate a statutorily created private right need not allege actual harm beyond the invasion of that private right." *Id*. at 1553.

### 3.    Time's disclosure was not "a bare procedural violation."

Finally, Time's argument that "Plaintiff's allegation of a bare procedural violation of the VRPA with no allegation or evidence of concrete harm does not satisfy the injury-in-fact requirement of Article III" misses the mark entirely. Mot. at 10. Time is correct that when a statute creates a *procedural* obligation (as opposed to directly protecting the statute's underlying *substantive* concern) further inquiry is required. The Court must ensure that the procedural violation is not "divorced from [the] concrete harm" the statute is designed to protect against. *Spokeo*, 136 S. Ct. at 1549. In such cases, the Court must assess whether the procedural violations "entail a degree of risk" to the statutory interest "sufficient to meet the concreteness requirement." *Id*. at 1550. And again, in those instances

12

where it has, "a plaintiff in such a case need not allege any *additional* harm beyond the one Congress has identified." *Id.* at 1549-50.

But that principle has no application here. This violation—Time's disclosure of its subscribers' confidential reading choices—is not a bare procedural violation divorced from any concrete harm; *it is not a procedural violation at all*. The VRPA's prohibition on the disclosure of personal information "do[es] not deal with the procedure or process for enforcing" consumers' privacy rights, it actually defines those rights as a matter of substantive law. *Wysocki v. IBM Corp.*, 607 F.3d 1102, 1106-07 (6th Cir. 2010). A procedural statute, by definition, typically does not tell the regulated entity *what* to do—it tells the regulated entity *how* (or how not) to do something. *Cf. Spokeo*, 136 S. Ct. at 1550 (using "fail[ure] to provide [a] required notice" as an example of a "bare procedural violation"); *Lujan*, 504 U.S. at 572 (describing "procedural requirement for a hearing prior to denial of [a] license application" and "procedural requirement for an environmental impact statement before a federal facility is constructed"); *Summers v. Earth Island Inst.*, 555 U.S. 488, 496 (2009) (treating denial of "the ability to file comments on some Forest Service actions" as "procedural injury").

That is not how the VRPA functions. It directly regulates the substantive privacy interest. *See Sterk v. Redbox Automated Retail, LLC*, 770 F.3d 618, 623 (7th Cir. 2014) (rejecting argument that "impermissible disclosures of one's

13

sensitive, personal information" was a mere technical violation of a statute

designed to protect video viewing history, because such disclosures were precisely

what the statute was intended to prohibit). By disclosing Ms. Coulter-Owens's

private reading choices, Time invaded her "right to read or observe what [s]he

pleases—the right to satisfy [her] intellectual and emotional needs in the privacy of

[her] own home." *Stanley v. Georgia*, 394 U.S. 557, 565 (1969); *see also Olmstead*

*v. United States*, 277 U.S. 438, 478 (1928) (Brandeis, J. dissenting) ("[T]he right to

be let alone [is] the most comprehensive of rights and the right most valued by

civilized men."). This is a violation of a substantive—not procedural—right.

## II.    Dismissing the Appeal on the Basis of Recent Amendments to the VRPA Is Not Warranted.

Time next argues that recent amendments to the VRPA compel dismissal

because they require an allegation of actual damage. But Time's argument that the

statute as amended does not authorize Ms. Coulter-Owens's suit goes to whether

she has a cause of action—not jurisdiction. *See, e.g.*, *FAA v. Cooper*, 132 S. Ct.

1441, 1454-55 (2012); *Doe v. Chao*, 540 U.S. 614, 624-25 (2004). This Court's

rules provide for motions to dismiss only for lack of jurisdiction, and it ordinarily

will not grant other motions to dismiss. *See* 6th Cir. R. 27(d); *Wilson v. Straub*, 27

F. App'x 454, 455 (6th Cir. 2001). The motion to dismiss on this ground is thus

improper and should be denied. *See, e.g.. U.S. v. Mooradian*, No. 85-3553, 1985

WL 14134, *1 (6th Cir. Dec. 10, 1985).[5]

In any event, even if this Court were to consider Time's argument at this juncture, the amendments are not retroactive and thus not relevant to this appeal. The Michigan Supreme Court has long recognized a "strong presumption against the retroactive application of statutes in the absence of a clear expression by the Legislature that the act be so applied." *Frank W. Lynch & Co. v. Flex Techs., Inc.*, 624 N.W.2d 180, 185 (Mich. 2001); *see also Kia Motors Am., Inc. v. Glassman Oldsmobile Saab Hyundai, Inc.*, 706 F.3d 733, 739 (6th Cir. 2013) (citing *Lynch*). As it explained, "a requirement that the Legislature make its intention clear 'helps ensure that [the Legislature] itself has determined that the benefits of retroactivity outweigh the potential for disruption or unfairness.'" *Lynch*, 624 N.W.2d at 184 (quoting *Landgraf v. USI Film Prods.*, 511 U.S. 244, 268 (1994)). Thus, "[a]bsent a clear legislative intent that the act be so applied," an act should not be deemed to apply retroactively. *Id*. at 185.

The Michigan Supreme Court has also noted that the Legislature "knows how to make clear its intention that a statute apply retroactively," most notably by using the word "retroactive." *Id*. at 183 (citing M.C.L. § 141.1157 ("This act shall

---

[5] At best, Time's argument sounds in statutory standing. But that does not aid Time's effort to raise it as a basis for dismissal. "The question of statutory standing is 'analytically distinct from the question whether a federal court has subject-matter jurisdiction to decide the merits of a case.'" *Jackson v. Sedgwick Claims Mgmt. Servs., Inc.*, 731 F.3d 556, 562 n.2 (6th Cir. 2013) (en banc) (quoting *Roberts v. Hamer*, 655 F.3d 578, 580 (6th Cir. 2011)).

be applied retroactively….”); M.C.L. § 324.21301a (“The changes in liability that are provided for in the amendatory act that added this subsection shall be given retroactive application.”)). Consequently, “the absence of express retroactive language is a strong indication that the Legislature did not intend a statute to apply retroactively.” *Kia Motors*, 706 F.3d at 739 (citing *Brewer v. A.D. Transp. Express, Inc.*, 782 N.W.2d 475, 478 (Mich. 2010)). Here, the VRPA amendments say nothing about retroactive application, and for that reason alone, fail to “clearly manifest[]” an intent to rebut the presumption of prospective application. *Kia Motors*, 706 F.3d at 739.[6]

Furthermore, the amendments expressly do not take effect until ninety days after they were enacted, *i.e.*, July 31, 2016. 2016 Mich. Pub. Acts 92, Enacting Section 1. (“This amendatory act takes effect 90 days after the date it is enacted into law.”). The Michigan Supreme Court has repeatedly held that “providing a

---

[6] In a recent oral argument involving the VRPA, the Michigan Supreme Court confirmed the primary importance of whether the Legislature used express retroactivity language, and the defendant in that case—represented by the same counsel as Time here—confirmed that in amending the VRPA, the Legislature did not do so: “Chief Justice Young: Is [the amended VRPA] retroactive? Defendant's Counsel: That's what's the open question, your honor. Chief Justice Young: Was it *expressly* retroactive? Defendant's Counsel: No, it wasn't.” Michigan Supreme Court, *151104 Deacon v. Pandora Media, Inc.* (Apr. 28, 2016), https://youtu.be/Q-WJQF5sSj4?t=41m. Also, the only district court to consider Time's arguments—including its strained *expressio unius* claim that (among other things) misrepresents a dissent as binding authority—has concluded the amendment is not retroactive. *Boelter v. Hearst Comm. Inc.*, No. 15-cv-3934, 2016 WL 3369541 (S.D.N.Y June 17, 2016).

16

specific future effective date and omitting any reference to retroactivity supports a conclusion that a statute should be applied prospectively only." *Johnson v. Pastoriza*, 818 N.W.2d 279, 287 (Mich. 2012) (quoting *Brewer*, 782 N.W.2d at 479). Here, both the complete absence of express retroactivity language and the express inclusion of a future effective date establish that the VRPA amendments apply prospectively. *See LaFontaine Saline, Inc. v. Chrysler Group, LLC*, 852 N.W.2d 78, 86 (Mich. 2014) ("The Legislature's silence regarding retroactivity in its amendment … undermines any argument that [the amended statute] was intended to apply retroactively. That the Legislature provided for the law to take immediate effect [on a future date] only confirms its textual prospectivity.").

Faced with an explicit future effective date and an absence of express retroactivity language, Time seeks refuge in the enactment provision's statement that "[t]his amendatory act is curative and intended to clarify." 2016 Mich. Pub. Acts 92, Enacting Section 2. But even where the Michigan Legislature intends to cure some problem in a statute's application or clarify some ambiguity, it *still* uses express retroactivity language or provides an antecedent effective date if it wishes the cure/clarification to apply retroactively. *See, e.g.,* 2014 Mich. Pub. Acts 352, Enacting Sections 1-2 (calling amendatory act "a curative measure" *and* specifying that it "applies to all fines, costs, and assessments ordered or assessed under [a statutory provision] before June 18, 2014"); 2007 Mich. Pub. Acts 103, Enacting

17

Section 2 (stating that amendatory act "is curative and intended to prevent any misinterpretation," *and* that the act "is retroactive"). Indeed, several of the cases on which Time attempts to rely actually illustrate this point. *See, e.g., Romein v. Gen. Motors Corp.*, 425 N.W.2d 174, 176-77 (Mich. Ct. App. 1988) (quoting act amending workers' compensation statute that, while "remedial and curative," also explained exactly how it applied to injuries occurring before an antecedent date); *In re Oswalt*, 444 F.3d 524, 529 (6th Cir. 2006) ("[T]he amendment states explicitly that it applies to mortgages recorded prior to July 14, 2003, and it contains a separate retroactivity clause."); *Gen. Motors Corp. v. Dep't of Treasury*, 803 N.W.2d 698, 706-07 (Mich. Ct. App. 2010) ("The Legislature gave the act retroactive effect by providing as follows: … 'This amendatory act is retroactive[.]'") (quoting 2007 Mich. Pub. Acts 103, Enacting Section 2).

In fact, the only cases Time cites that even arguably support its position that the Legislature's use of the phrase "curative and intended to clarify" requires retroactive application are *Allstate Insurance Co. v. Faulhaber*, 403 N.W.2d 527 (Mich. Ct. App. 1987) and *People v. Sheeks*, 625 N.W.2d 798 (Mich. Ct. App. 2001). But both of those cases are decisions of intermediate Michigan courts, and both predate the Michigan Supreme Court's opinion in *Lynch* and its requirement of "a clear expression by the Legislature" that an act apply retroactively. 624 N.W.2d at 185. *Allstate*, for example, cites a 1984 Michigan Supreme Court case

for the proposition that the Legislature can "expressly *or impliedly*" indicate that an act apply retroactively, 403 N.W.2d at 166 (emphasis added), and *Sheeks* in turn cites *Allstate* for that proposition, 625 N.W.2d at 801. After *Lynch*, however, only a "clear expression" of such intent will do. 624 N.W.2d at 185.

Time also attempts to find refuge in what the Michigan Supreme Court has termed the "so-called 'exception' to the general rule of prospective application providing that statutes which operate in furtherance of a remedy or mode of procedure and which neither create new rights nor destroy, enlarge, or diminish existing rights are generally held to operate retrospectively unless a contrary legislative intent is manifested." *Lynch*, 624 N.W.2d at 183 (internal quotations omitted). But the new requirement that a person must suffer actual damages does destroy or diminish existing rights. Prior to the amendment, a consumer suffering injury to her intangible—but nevertheless real—privacy interest without any consequential monetary loss or bodily harm (*i.e.*, actual damages) held a private right under the VRPA. After the amendment, such a consumer no longer does. That change significantly affects substantive rights by terminating such consumers' ability to bring suit to protect their privacy, and thus does not fall within the so-called exception. *See id*. Regardless, even if the amendment *did* fall within the exception and were thus presumptively retroactive, the Legislature manifested a contrary intent by expressly providing a future effective date.

19

Time's legislative history argument fares no better. Isolated statements from a single Senator and an interested attorney's testimony warning that courts might interpret the amendments as applying retroactively do not establish legislative intent that they do, much less the "clear expression" of such intent *Lynch* requires. 624 N.W.2d at 185. To the contrary, the fact that such warnings were ignored suggests that the Legislature understood that the amendment would not be applied retroactively and intentionally rejected the contrary view.

Nor were the amendments enacted "amid ongoing controversy" over who may bring a VRPA action. Mot. at 16-17. As one of Time's own cases recognized, "every single court" to consider the issue adopted the same interpretation of the statute. *Kinder v. Meredith Corp.*, No. 14-cv-11284, 2014 WL 4209575, *2 (E.D. Mich. Aug. 26, 2014). And unlike other statutory amendments enacted to resolve a controversy and applied retroactively, the legislative history is completely silent as to the supposed problem. *Cf. Sheeks*, 625 N.W.2d at 802 (quoting House Legislative Analysis detailing problems arising out of judicial interpretation of statute); *In re Oswalt*, 318 B.R. 817, 822 (W.D. Mich. 2004) ("The legislative analysis specifically addresses the problem created by [a case interpreting the statute]."). For all these reasons, Time's retroactivity argument fails.

## CONCLUSION

Time's motion to dismiss the appeal should be denied.

Dated: June 23, 2016                     Respectfully submitted,

                                          **ROSE COULTER-OWENS,**

                                          By: s/  Roger Perlstadt
                                          *One of Plaintiff-Appellant's Attorneys*

William S. Consovoy                      Ryan D. Andrews
will@consovoymccarthy.com                randrews@edelson.com
CONSOVOY MCCARTHY PARK PLLC              Roger Perlstadt
3033 Wilson Blvd, Suite 700              rperlstadt@edelson.com
Arlington, Virginia 22201                EDELSON PC
Tel: 703.243.9423                        350 North LaSalle Street, 13th Floor
                                          Chicago, Illinois 60654
Patrick Strawbridge                      Tel: 312.589.6370
patrick@consovoymccarthy.com             Fax: 312.589.6378
CONSOVOY MCCARTHY PARK PLLC
Ten Post Office Square,
8th Floor South PMB #706
Boston, Massachusetts 02109
Tel: 617.227.0548


                        *Counsel for Plaintiff-Appellant*

## CERTIFICATE OF SERVICE

I hereby certify that on June 23, 2016, I electronically filed the foregoing with the Clerk of the Court of the United States Court of Appeals for the Sixth Circuit by using the CM/ECF system. I certify that all participants in the case are registered CM/ECF users and that service will be accomplished by the CM/ECF system.

s/  Roger Perlstadt
*One of Plaintiff-Appellant's Attorneys*