**Edelson PC**

350 North LaSalle Street, 13th Floor, Chicago, Illinois 60654
t 312.589.6370 | f 312.589.6378 | www.edelson.com

July 11, 2016

<u>Via CM/ECF</u>

Deborah S. Hunt
Office of the Clerk
United States Court of Appeals for the Sixth Circuit
540 Potter Stewart U.S. Courthouse
100 E. Fifth Street
Cincinnati, Ohio 45202-3988

**Re: Nos. 16-1321 and 16-1380,** *Coulter-Owens v. Time, Inc.*

Dear Ms. Hunt:

On behalf of Plaintiff-Appellant Rose Coulter-Owens, I write to bring the Court's attention to the opinion issued by the Michigan Supreme Court in *In re Certified Question From the United States Court of Appeals for the Ninth Circuit (Deacon v. Pandora Media, Inc.)*, No. 151104 (Mich. Jul. 6, 2016) (a copy of which is attached hereto as Exhibit A). *See* Fed. R. App. P. 28(j). *Deacon*, like this appeal, involved litigation under the Video Rental Privacy Act ("VRPA"), MCL 445.1711 *et seq.*, which was recently amended by the Michigan Legislature. Ms. Coulter-Owens argued in her papers that the amendments did not apply retroactively, and that the amendments' future enacting date demonstrated they only applied prospectively. (Dkt. 27 at 16–17.)

While the Michigan Supreme Court acknowledged the recent amendments, it nevertheless applied the version of the VRPA "in effect at the time of the events giving rise to [the] case" and stated that the amendments did not affect the analysis "in any respect." *Deacon*, slip op. at 5 n.7. Further, the court repeatedly highlighted the amendments' future effective date and did not apply any of the provisions retroactively. *See id.* at 6 & nn.8–9 ("At all times relevant to this case, MCL 445.1712 of the [VRPA] prohibited the disclosure of certain materials . . . ."; "2016 PA 92 adds a sixth exception to MCL 445.1713, effective July 31, 2016."; "Effective July 31, 2016, MCL 445.1711(a) will provide that . . ."). Thus *Deacon*, as well as the other authorities cited in Ms. Coulter-Owens's opposition papers, demonstrates that the VRPA amendments are not retroactive, and the Michigan Supreme Court would agree.

Chicago | San Francisco

**Edelson PC**

Sincerely,

EDELSON PC

*s/*Ryan D. Andrews

Counsel for Plaintiff-Appellant Rose Coulter-Owens

Case: 16-1321     Document: 29     Filed: 07/11/2016     Page: 2

Edelson PC

Chicago | San Francisco

# Exhibit A

**Michigan Supreme Court**
**Lansing, Michigan**

# Syllabus

Chief Justice:
Robert P. Young, Jr.

Justices:
Stephen J. Markman
Brian K. Zahra
Bridget M. McCormack
David F. Viviano
Richard H. Bernstein
Joan L. Larsen

**This syllabus constitutes no part of the opinion of the Court but has been prepared by the Reporter of Decisions for the convenience of the reader.**

Reporter of Decisions:
Corbin R. Davis

*In re* CERTIFIED QUESTION FROM THE UNITED STATES COURT OF APPEALS FOR THE NINTH CIRCUIT (DEACON v PANDORA MEDIA, INC)

Docket No. 151104. Argued on request to answer the certified question April 27, 2016. Decided July 6, 2016.

Peter Deacon, individually and on behalf of all others similarly situated, brought an action in the United States District Court for the Northern District of California against Pandora Media, Inc., which operates a music-streaming program through the Internet that allows each listener to create a unique, customized radio station based on, for example, a preferred artist or musical genre. The music that Pandora streams becomes increasingly refined to more closely match the listener's music preferences as the listener indicates to Pandora whether he or she likes or dislikes particular songs being played. The listener may skip or bypass a song, but may not save, fast forward, or rewind a song. In addition, the listener cannot select the particular song to be played but must restrict himself or herself to the song selected by Pandora. Pandora is free, although listeners may elect to pay a fee to use a version of Pandora that does not have commercials. There was no indication that Deacon chose that option. Deacon claimed, in relevant part, that Pandora had violated the preservation of personal privacy act (PPPA), MCL 445.1711 *et seq*. (also commonly known as the video rental privacy act or VRPA), by publically disclosing personal information concerning his music preferences. The court ruled in Pandora's favor and dismissed Deacon's claim. 901 F Supp 2d 1166 (ND Cal, 2012). Deacon appealed in United States Court of Appeals for the Ninth Circuit and, pursuant to MCR 7.305(B)(1) (now MCR 7.308(A)(2)), that court certified the following question to the Supreme Court:

> Has Deacon stated a claim against Pandora for violation of the [PPPA] by adequately alleging that Pandora is [in] the business of "renting" or "lending" sound recordings, and that he is a "customer" of Pandora because he "rents" or "borrows" sound recordings from Pandora?

Furthermore, in certifying the question, the Ninth Circuit noted that the particular phrasing used in the certified question was not intended to restrict the Supreme Court's consideration of the problems involved or the issues as the Supreme Court perceived them to be in its analysis of the record certified in the case. The Supreme Court ordered and heard oral argument on whether to answer the certified question. 498 Mich 882 (2015).

In a unanimous opinion by Justice MARKMAN, the Supreme Court *held*:

At all relevant times, the version of the PPPA originally enacted by 1988 PA 378 applied to this case. MCL 445.1712 prohibited certain persons from disclosing any record or information concerning the purchase, lease, rental, or borrowing of books or other written materials, sound recordings, or video recordings by a customer that indicates the identity of the customer. Under MCL 445.1715, only a customer may bring a civil action for a violation of the PPPA. In the context of this case, MCL 445.1711(a) defined a customer as a person who rents or borrows a sound recording. The Supreme Court limited the question in this case to whether Deacon could be characterized as a customer of Pandora because he was a person who rented or borrowed sound recordings from Pandora. The verb "rent" contemplates some form of payment. For a Pandora listener to constitute a person who rents a sound recording, he or she must, at a minimum, provide a payment to Pandora in exchange for that recording. Deacon was not a person who rented a sound recording because he did not give any payment for it. The verb "borrow" contemplates some promise to return the borrowed subject matter or its equivalent. Deacon was not a person who borrowed a sound recording because there was no promise, implied or expressed, that he would return the sound recording or its equivalent to Pandora. The music-streaming program offered by Pandora only involved the delivery of a sound recording to the listener. Therefore, Deacon was not a customer of Pandora under the PPPA because he neither rented nor borrowed a sound recording from Pandora.

Certified question, as limited by the Supreme Court, answered in the negative.

Chief Justice YOUNG, concurring, joined the majority opinion in full and wrote separately only to explain why, given his longstanding views on the questionable constitutionality of responding to certified questions from federal courts, he choose to participate in responding to the certified question in this case. Chief Justice YOUNG believed that, as a prudential matter, the Supreme Court should accept and answer certified questions from the federal courts sparingly and only when the Michigan legal issue is a debatable one and pivotal to the federal case that prompted the request for the certified question. The Michigan legal issue here—whether Deacon was a customer who rented or borrowed sound recordings under the PPPA—was determinative to the federal case and a debatable question, actively contested by the parties. The case called for the federal courts to interpret and apply a statute rarely seen in Michigan courts to new technologies not in existence when the statute was enacted, and the majority opinion gave effect to the plain and ordinary meaning of the PPPA's provisions.

©2016 State of Michigan

Michigan Supreme Court
Lansing, Michigan

# OPINION

Chief Justice:
Robert P. Young, Jr.

Justices:
Stephen J. Markman
Brian K. Zahra
Bridget M. McCormack
David F. Viviano
Richard H. Bernstein
Joan L. Larsen

FILED July 6, 2016

S T A T E  O F  M I C H I G A N

SUPREME COURT

*In re* CERTIFIED QUESTION FROM THE
UNITED STATES COURT OF APPEALS
FOR THE NINTH CIRCUIT

PETER DEACON, individually and on
behalf of all others similarly situated,

        Plaintiff,

v      No. 151104

PANDORA MEDIA, INC.,

        Defendant.

BEFORE THE ENTIRE BENCH

MARKMAN, J.

    Plaintiff, Peter Deacon, filed suit against defendant, Pandora Media, Inc., in the United States District Court for the Northern District of California, claiming in relevant part that defendant had violated the preservation of personal privacy act, MCL 445.1711

*et seq.*,[1] by publically disclosing personal information concerning his music preferences. The federal district court ruled in favor of defendant, and under MCR 7.305(B),[2] the United States Court of Appeals for the Ninth Circuit certified the following question to this Court:

> Has Deacon stated a claim against Pandora for violation of the VRPA by adequately alleging that Pandora is [in] the business of "renting" or "lending" sound recordings, and that he is a "customer" of Pandora because he "rents" or "borrows" sound recordings from Pandora?

Furthermore, in certifying the question, the Ninth Circuit noted that

> "the particular phrasing used in the certified question[s] is not to restrict the [Michigan] Supreme Court's consideration of the problems involved and the issues as the [Michigan] Supreme Court perceives them to be in its analysis of the record certified in this case. This latitude extends to the [Michigan] Supreme Court's restatement of the issue or issues and the manner in which the answers are to be given, whether as a comprehensive whole or in subordinate or even contingent parts." [*Deacon v Pandora Media, Inc.*, unpublished amended order of the United States Court of Appeals for the Ninth Circuit, entered February 24, 2015 (Case No. 12-17734), p 12, quoting *Martinez v Rodriquez*, 394 F2d 156, 159 n 6 (1968) (alterations in original).]

---

[1] While other courts have referred to this statute as the "video rental privacy act" (VRPA), its provisions also cover books, written materials, and sound recordings. Accordingly, we will refer to it throughout this opinion as the "preservation of personal privacy act" (PPPA).

[2] When the question was certified, MCR 7.305(B)(1) provided that "[w]hen a federal court, state appellate court, or tribal court considers a question that Michigan law may resolve and that is not controlled by Michigan Supreme Court precedent, the court may on its own initiative or that of an interested party certify the question to the Michigan Supreme Court." Effective September 1, 2015, the court rule was renumbered as MCR 7.308(A)(2) with a few slight changes in wording.

Having now heard oral argument and considered the issues involved, we grant the Ninth Circuit's request to answer its question. However, we limit the question to whether plaintiff can be characterized under the PPPA as a "customer" of defendant because at the relevant time he was a person who "rent[ed]" or "borrow[ed]" sound recordings from defendant. We conclude that plaintiff was not such a "customer."

## I.  FACTS AND HISTORY

Defendant is a Delaware corporation with its principal place of business in California. It operates a music-streaming program through the Internet called "Pandora"[3] that allows each listener to create a unique, customized "radio station" based on, for instance, a preferred artist or musical genre. Thereafter, the music streamed by Pandora becomes increasingly refined to more closely match the listener's music preferences as the listener indicates to Pandora whether he or she likes or dislikes particular songs being played.[4] The listener may skip or bypass a song, but may not save, fast forward, or rewind a song. In addition, the listener cannot select the particular song to be played, but must restrict himself or herself to the song selected by Pandora. Pandora is free, although

---

[3] "A stream is an electronic transmission that renders the musical work audible as it is received by the client-computer's temporary memory. . . . [T]here is a playing of the song that is perceived simultaneously with the transmission." *United States v American Society of Composers, Authors & Publishers*, 627 F3d 64, 74 (CA 2, 2010).

[4] As described by defendant in the Form S-1 Registration Statement it filed with the Securities and Exchange Commission, Pandora "uses intrinsic qualities of music to initially create stations and then adapts playlists in real-time based on the individual feedback of each listener."

listeners may elect to pay a fee to use a version of Pandora that does not have commercials.

In September 2011, plaintiff, a Michigan resident, sued defendant in the federal district court. He alleged that defendant (a) made its listeners' profile pages, each of which included information about the listener's music preferences, "publicly available and searchable on the World Wide Web for anyone to view" and (b) "unilaterally integrated its [listeners'] profile pages with their Facebook accounts."[5] According to plaintiff, that integration resulted in the public release of "sensitive listening records to all of [a listener's] Facebook 'friends.' " As a consequence of these two disclosures, plaintiff claimed, defendant had violated both the PPPA and the Michigan Consumer Protection Act (MCPA), MCL 445.901 *et seq*. Plaintiff sought monetary and equitable relief for himself and on behalf of a putative class of all Michigan residents who were registered listeners of Pandora before August 5, 2010, and who allegedly had suffered similar public disclosures of personal information. The federal district court granted defendant's motion to dismiss both claims. *Deacon v Pandora Media, Inc*, 901 F Supp 2d 1166 (ND Cal, 2012). Plaintiff appealed the dismissal of his PPPA claim in the Ninth Circuit, and that court certified the present question to this Court.[6] We ordered oral argument on whether to grant the request to answer this question, *In re Certified Question*

---

[5] During the proceedings in the Ninth Circuit, the parties disputed whether the allegedly disclosed information concerning plaintiff's music preferences connected those preferences with his full name. We do not address that dispute.

[6] Plaintiff did not appeal the dismissal of his MCPA claim, and that claim is not at issue here.

*from the United States Court of Appeals for the Ninth Circuit*, 498 Mich 882 (2015), and argument was heard on April 27, 2016.

## II.  STANDARD OF REVIEW

"This Court reviews de novo issues of statutory interpretation." *In re COH*, 495 Mich 184, 191; 848 NW2d 107 (2014).

## III.  ANALYSIS

"Our goal in interpreting a statute 'is to give effect to the Legislature's intent, focusing first on the statute's plain language.' " *Malpass v Dep't of Treasury*, 494 Mich 237, 247-248; 833 NW2d 272 (2013), quoting *Klooster v City of Charlevoix*, 488 Mich 289, 296; 795 NW2d 578 (2011).  "[W]ords used by the Legislature must be construed and understood in accordance with their common, ordinary meaning." *Smitter v Thornapple Twp*, 494 Mich 121, 129; 833 NW2d 875 (2013).  "When the language of a statute is clear, it is presumed that the Legislature intended the meaning expressed therein." *Epps v 4 Quarters Restoration LLC*, 498 Mich 518, 529; 872 NW2d 412 (2015).

The title of the PPPA states that it is

> [a]n act to preserve personal privacy with respect to the purchase, rental, or borrowing of certain materials; and to provide penalties and remedies for violation of this act.[7]

---

[7] 1988 PA 378, title.  On May 2, 2016, while this case was pending before this Court, the Governor signed into law 2016 PA 92, effective July 31, 2016.  That public act amends the PPPA in several respects, but not in any respect that affects our analysis here.  Our opinion refers only to the version of the PPPA in effect at the time of the events giving rise to this case.

5

At all times relevant to this case, MCL 445.1712 of the PPPA prohibited the disclosure of certain materials:

> Except as provided in [MCL 445.1713] or as otherwise provided by law, a person, or an employee or agent of the person, engaged in the business of selling at retail, renting, or lending books or other written materials, sound recordings, or video recordings shall not disclose to any person, other than the customer, a record or information concerning the purchase, lease, rental, or borrowing of those materials by a customer that indicates the identity of the customer.[8]

Furthermore, MCL 445.1711(a) of the PPPA defined "customer" as follows:

> "Customer" means a person who purchases, rents, or borrows a book or other written material, or a sound recording, or a video recording.[9]

Finally, MCL 445.1715 of the PPPA provided a civil remedy for its violation:

> Regardless of any criminal prosecution for a violation of this act, a person who violates this act shall be liable in a civil action for damages to the customer identified in a record or other information that is disclosed in violation of this act. The customer may bring a civil action against the person and may recover both of the following:
>
> (a) Actual damages, including damages for emotional distress, or $5,000.00, whichever is greater.
>
> (b) Costs and reasonable attorney fees.

---

[8] MCL 445.1713(a) to (e) set forth five exceptions to the general prohibition against disclosure under MCL 445.1712. None of these exceptions is relevant here. 2016 PA 92 adds a sixth exception to MCL 445.1713, effective July 31, 2016.

[9] Effective July 31, 2016, MCL 445.1711(a) will provide that " '[c]ustomer' means an individual who purchases, rents, or borrows a book, other written material, a sound recording, or a video recording." See 2016 PA 92.

Under MCL 445.1715, only a "customer" may bring a civil action for a violation of the PPPA.  For the reasons that follow, we conclude that plaintiff was not a "customer" as defined by MCL 445.1711(a) because he neither "rent[ed]" nor "borrow[ed]" a sound recording.[10]  Accordingly, we need not address whether plaintiff established the remaining elements of a PPPA claim, such as, for example, whether the PPPA applied to defendant because it was "engaged in the business of . . . renting, or lending . . . sound recordings" under MCL 445.1712.

The PPPA does not define either "rent" or "borrow."  "When considering the meaning of a nonlegal word or phrase that is not defined in a statute, resort to a lay dictionary is appropriate."  *Wesche v Mecosta Co Rd Comm*, 480 Mich 75, 84; 746 NW2d 847 (2008).  In this regard, it is best to consult a dictionary from the era in which the legislation was enacted.  See *Cain v Waste Mgt, Inc (After Remand)*, 472 Mich 236, 247; 697 NW2d 130 (2005) ("Because the statute itself does not define 'loss,' . . . we must ascertain the original meaning the word 'loss' had when the statute was enacted in 1912.").  Because the PPPA was enacted in 1988, we consult dictionaries from that era to define those words.  Furthermore, because those words are used as verbs in the statute, we identify the definitions of those words as verbs.

Concerning "rent," *The Random House Dictionary of the English Language: Second Unabridged Edition* (1987), defines the transitive form of the verb "rent" as "to take and hold (property, machinery, etc.) in return for the payment of rent . . . ."  Because

---

[10] Plaintiff does not argue that he "purchase[d]" a sound recording for the purposes of MCL 445.1711(a).

the dictionary definition of the verb "rent" incorporates the noun "rent," we also determine the definition of the noun form of that word. The noun "rent" is defined as "a payment or series of payments made by a lessee to an owner in return for the use of machinery, equipment, etc."[11] *Id*. Thus, for a listener to constitute a person who "rents" a sound recording, he or she must, at a minimum, provide a payment in exchange for that recording. Stated otherwise, the word "rent" contemplates some form of payment. Here, however, there is nothing to suggest that plaintiff was one of those listeners who paid the optional fee to receive sound recordings using the commercial-free version of Pandora. Further, there is nothing to suggest that plaintiff otherwise provided any payment to defendant in exchange for a sound recording. Thus, because plaintiff did not provide a payment for a sound recording,[12] we conclude that he was not "a person who . . . rents . . . a sound recording . . . ."[13] MCL 445.1711(a).

---

[11] By referring to this definition of the noun "rent," we express no opinion on whether plaintiff may be characterized as the "lessee" or defendant may be characterized as the "owner" of sound recordings.

[12] Plaintiff summarily asserts in a footnote that he was a person who "rent[ed]" a sound recording because he "gave Pandora 'rent' in the form of advertising impressions and valuable personal and demographic information." We conclude that this argument has been abandoned because plaintiff has provided no support for it. See *Mitcham v Detroit*, 355 Mich 182, 203; 94 NW2d 388 (1959) ("It is not enough for an appellant in his brief simply to announce a position or assert an error and then leave it up to this Court to discover and rationalize the basis for his claims, or unravel and elaborate for him his arguments, and then search for authority either to sustain or reject his position."). Thus, we will not further address the argument.

[13] Although we conclude that plaintiff was not a person who "rent[ed]" a sound recording because he did *not* provide a payment for it, we do not intend to suggest that the opposite conclusion would necessarily result if plaintiff *had* provided a payment. That is, we do not address the parties' arguments concerning whether and to what extent, if any, it is

Concerning "borrows," *The Random House Dictionary of the English Language: Second Unabridged Edition* (1987), defines the verb "borrow" as "to take or obtain with the promise to return the same or an equivalent[.]"  Thus, the word "borrow" contemplates some promise to return the borrowed subject matter or its equivalent.  As applied here, plaintiff was not a person who "borrow[ed]" a sound recording because there was no promise, implied or expressed, that he would ever "return" the sound recording or its equivalent to defendant.  Put simply, the music-streaming program offered by defendant only involved the *delivery* of a sound recording to the listener; there was no corresponding "return" of a recording or its equivalent from the listener to defendant.  *American Broadcasting Cos, Inc v Aereo, Inc*, 573 US ___, ___; 134 S Ct 2498, 2503; 189 L Ed 2d 476 (2014) ("See A Dictionary of Computing 494 (6th ed. 2008) (defining 'streaming' as '[t]he process of providing a steady flow of audio or video data so that an Internet user is able to access it as it is transmitted').") (alteration in original); *Microsoft Computer Dictionary*, Fourth Edition (Washington: Microsoft Press, 1999), p 425 (defining "streaming" as "the process of delivering information, especially multimedia sound or video, in a steady flow that the recipient can access as the file is

---

only possible to "rent" a sound recording through "use" or "control."  Compare the statement in defendant's supplemental brief on appeal that "the District Court correctly found the Complaint to be deficient because it is devoid of factual allegations sufficient to support a plausible claim that Plaintiff exercised, over the temporary Internet file, the type of use and control inherent in a 'borrowing' or 'renting' relationship" with the statement in plaintiff's supplemental brief on appeal that "the word 'use' never appears in the [PPPA] so the entire line of argument focused on 'use' is utterly misplaced."

being transmitted").[14] Nothing in the present dispute suggests that plaintiff or defendant promised anything more. We accordingly conclude that plaintiff was not "a person who . . . borrows . . . a sound recording . . . ."[15] MCL 445.1711(a).

## IV. CONCLUSION

At all relevant times, MCL 445.1711(a) provided that " '[c]ustomer' means a person who . . . rents, or borrows . . . a sound recording . . . ." We hold that plaintiff was not a person who "rent[ed]" a sound recording because he did not give payment for it. We further hold that plaintiff was not a person who "borrow[ed]" a sound recording because there was no promise, implied or expressed, that he would "return" the sound

---

[14] Although we recognize that the federal district court dismissed the PPPA claim under FR Civ P 12(b)(6) on the basis of its conclusion that plaintiff had "not alleged facts showing that Pandora rented, lent and/or sold music to him," *Deacon*, 901 F Supp 2d at 1176, and that he appealed the denial in the Ninth Circuit, we do not respond to the certified question to apply federal law concerning FR Civ P 12(b)(6) to his complaint. Rather, we only resolve an issue of Michigan law. In this regard, as stated previously, the Ninth Circuit, quoting *Martinez*, 394 F2d at 159 n 6, has asserted that " 'the particular phrasing used in the certified question[s] is not to restrict the [Michigan] Supreme Court's consideration of the problems involved and the issues as the [Michigan] Supreme Court perceives them to be . . . ." (Alterations in original.) In our judgment, the issue of Michigan law is best resolved without restricting it by the allegations in plaintiff's complaint. Thus, we will not answer the question presented here on the basis of an allegation unsupported by the record-- that the sound recording is physically removed from the listener's computer and returned to defendant, which allegation appears to be contrary to the basic definition of "streaming" found in computer dictionaries-- simply because the question encompasses the phrase "stated a claim."

[15] As with our conclusion concerning the word "rents," our conclusion concerning the word "borrows" leaves unresolved the issue of whether and to what extent, if any, it is only possible to "borrow" a sound recording through "use" or "control." See note 13 of this opinion.

recording or its equivalent to defendant. We therefore conclude that plaintiff was not a "customer" of defendant under the PPPA because he was not a person who "rent[ed]" or "borrow[ed]" a sound recording from defendant.[16]

                                                        Stephen J. Markman
                                                        Robert P. Young, Jr.
                                                        Brian K. Zahra
                                                        Bridget M. McCormack
                                                        David F. Viviano
                                                        Richard H. Bernstein
                                                        Joan L. Larsen

---

[16] We recognize that in our digitized world it is possible to transmit audio or visual materials on a temporary basis absent any "return" of those materials. Our conclusion that plaintiff was not one who "borrow[ed]" a sound recording is directed by the language of the PPPA. To the extent that there are some who believe that the law should direct a different result, those arguments should be addressed to the Legislature. *People v Dunbar*, 499 Mich 60, 72; 879 NW2d 229 (2016) ("[W]hen the people wish to argue that a statute is unwise or results in bad policy, those arguments should be addressed to the Legislature.") (quotation marks and citation omitted).

S T A T E   O F   M I C H I G A N

SUPREME COURT

In re CERTIFIED QUESTION FROM THE
UNITED STATES COURT OF APPEALS
FOR THE NINTH CIRCUIT

---

PETER DEACON, individually and on
behalf of all others similarly situated,

    Plaintiff,

v    No. 151104

PANDORA MEDIA, INC.,

    Defendant.

---

YOUNG, C.J. (*concurring*).

I join the majority opinion in full and write only to explain why, given my longstanding views on the questionable constitutionality of responding to certified questions from federal courts, I choose to participate in responding to the instant certified question.[1]

As I have stated previously, because of my constitutional reservations about responding to federal certified questions, I believe this Court should, as a prudential

---

[1] See *In re Certified Question from the United States Dist Court for the Western Dist of Mich*, 493 Mich 70, 83; 825 NW2d 566 (2012) (YOUNG, C.J., dissenting) ("I continue to believe that this Court lacks the constitutional authority to issue advisory opinions other than as described in article 3, § 8 of Michigan's 1963 Constitution. My position regarding the Court's constitutional authority did not prevail, and I accept that the Court has determined otherwise.") (citations omitted).

matter, "accept and answer certified questions from the federal courts sparingly and only when the Michigan legal issue is a debatable one and pivotal to the federal case that prompted the request for the certified question."[2]

The United States Court of Appeals for the Ninth Circuit has asked whether plaintiff has stated a claim upon which relief may be granted under the preservation of personal privacy act (PPPA), MCL 445.1711 *et seq*.  The Michigan legal issue here—whether plaintiff is a "customer" under the PPPA who "rents" or "borrows" sound recordings—is determinative to the federal case.[3]  Further, the legal question here is a debatable one, actively contested by the parties on appeal in this Court.[4]  By contrast, in *Certified Question*, the plaintiff could have prevailed only if a court construed a statutory term in a way that was completely inconsistent with the plain meaning of our succession statute.[5]  I believe the majority has given effect to the plain and ordinary meaning of MCL 445.1711 and MCL 445.1712 of the PPPA, but the resolution of this dispute was not as immediately apparent as it was in *Certified Question*, in which the answer to the

---

[2] *Id*. at 83-84.

[3] See MCL 445.1711 and MCL 445.1712; *Certified Question*, 493 Mich at 84 (YOUNG, C.J., dissenting).

[4] Compare *Certified Question*, 493 Mich at 84-85 (YOUNG, C.J., dissenting) ("[T]he question whether the children may be considered to have been alive at the time of their father's death is not debatable under our intestacy laws—a point plaintiff's counsel conceded at oral argument.").

[5] See *id*. at 85.

question of whether children created by in vitro fertilization *after* the father's death were "in gestation" *during* the father's lifetime was patently clear and not contested.[6]

This case called for the federal courts to interpret and apply a statute rarely seen in our state courts to new technologies not in existence at the time the statute was enacted. I believe that the question is sufficiently nuanced that this Court, as a prudential matter, properly responded by answering the question for the federal court.

                                          Robert P. Young, Jr.

---

[6] See *id*. at 85-86.